Good morning, everyone. Welcome. Our first case this morning is FTC v. Credit Bureau Center. Mr. ... is it Coachell? Yes, Your Honor. I pronounced it correctly. Good. You may proceed. As the Court knows, I represent Credit Bureau Center and Michael Brown, who is an individual defendant in the case. We have a number of issues for the Court today. I'm going to launch into the legal issues as opposed to the fact and then address facts as they come up. The legal issues are basically a product of a Supreme Court case, Kochesh v. SEC, which was decided in March of 2017. In the wake of that case, when I became counsel in this matter, we took a look at some of the comments by the Court on the issues of traditional principles of restitution, disgorgement, and the issues of when does equitable restitution become a penalty and is therefore not equitable restitution. We raised a motion before the Court in the context of a motion to dissolve the preliminary injunction, since I had gotten into the case after that, and looking at the plain meaning of the statutes involved, which were Section 13B of the FTC Act and Section 19 of the Act. Our contention to the Court at that time was that the plain language of 13B did not permit retroactive monetary actions or damages actions seeking what the FTC calls equitable monetary relief, because the statute is one that sounds in equity as opposed to law. The bottom line was that in Kochesh, the Court analyzed how does this all interplay in terms of statutes. In Kochesh, the case arose in the context of a statute of limitations on damages actions by the SEC, and the Court articulated some fairly well-known principles that disgorgement is not compensatory, where, as in this case, the funds can be paid or may be paid to the U.S. Treasury and are not specifically being meted out as traditional restitution to people who have lost funds and are seeking a defendant's net gains. Well, that's actually the second-order legal question, as I see it. The first-order legal question is whether 13B authorizes any form of relief, equitable or otherwise, beyond an injunction. I don't think it does, Your Honor. And when you go to the plain meaning of the words, the plain meaning of the words is just injunction. And there's nothing, like in other statutes, like Dodd-Frank or ERISA or some of these other statutes, you'll see the Court is allowed to impose equitable relief or relief, including but not limited to restitution, disgorgement, or so on. In this case, this is a statute that, when you look at the entire section, Section 13, this was a stopgap measure, as it was described by one of the legislators. It's a stopgap measure to prevent people from continuing acts or practices going into the future while the FTC undertook and filed a complaint within its adjudicatory processes under Section 19. And so you have what the courts have said. Here's the first proviso that talks about temporary TROs and temporary injunctions. And then they've carved out the second proviso, which then deals with permanent injunctions in proper cases and upon proper proof. Assuming, counsel, we agree with your reading of your statute for purposes of discussion, how do we deal with our previous precedent? What do we do with Amy Travel and some of these other previous cases? Well, I think to some extent they are overruled because they have been brought under Section 13B and not Section 19. These are precedents that the court has to take a look at. But then in light of Kokesh and in light of the recent decisions by the Third Circuit in Shire Pharmaceutical and the panel decision in the Ninth Circuit that pretty much trapped a lot of my reasoning below in this court, I think you have to look at whether those courts simply did not conduct the kind of plain meaning analysis that is required of circuit courts when they are called upon to review a statute and when the plain meaning is challenged. And in some of those cases, like for worldwide travel, the court simply looked at the Ninth Circuit decision and said, we like this decision. We're going to adopt it. Plus, in worldwide travel, the party hadn't even briefed the issue of whether there was authority. So all that discussion should be treated as dicta in world travel? Yes, ma'am. So the court applied the statute because there was no meaningful challenge to it. World travel wasn't even about restitutionary relief, as I read the case. It was an interlocutory appeal of the grant of a preliminary injunction, which is specifically provided. That power is specifically included in 13B. So the court didn't have to address any issue of whether ancillary relief was available. That's correct, Your Honor. So it was not only dicta because the issue was waived. It was completely unnecessary because the express power that was at issue there was granted in the statute. Right. So in terms of other, like there's one case in particular that I think had at least more analysis than other cases, and that's the FTC versus JS and A case, which I have here. And that particular case addressed the issue of whether Section 13B is a standalone or independent grant of authority by Congress for the FTC to engage in lawsuits that impose receiverships and seize property and so on. Was it what you call the ancillary? Ancillary. Result of the injunction? Yes, Your Honor. And that's where you say they went too far or got off base? I think so. In JS and A, they looked at the plain language of the statute. And this was really the only case I found that actually looked at the language of the statute, much to the Seventh Circuit's credit. But in that particular case, which is an 84 case, we don't think that the court reached the right result. And I don't think that you, if you choose to, of course, you can separate these provisos and say these are separate provisions. But this is one lengthy provision that has several provisos in it. But I think that you have to view the entire proviso as a whole, give each word in the provisos the plain meaning that Congress intended. Now, the difference and the reason why I think that the court came to the wrong decision is that the words that the commission may file a suit and where they can file a suit under Section 13B, but then when it comes time to getting a permanent, that's to get injunctive relief, but then when it comes time to seek a permanent injunction, then the congressional words given may seek a permanent injunction. And we think that that's important language because it's very different from filing a separate stand-alone lawsuit. It implies very clearly to me anyway that there is a pending lawsuit, that the commission has taken action to file a temporary injunction or a TRO. And then in the context of it, and as the legislative history, Senate Bill 356 indicates, there are two things that were observed in that particular issue, is that with the Senate Bill, which appears, I don't think I have the right, it's at page 457 of the JSNA group, provision is made for the commission to seek, and after a hearing for a court to grant a permanent injunction, this will allow the commission to seek a permanent injunction when a court, when a court is reluctant to grant a temporary injunction because it cannot be assured of an early hearing on the merits. So clearly this is a court-driven issue. The court is concerned that it has a temporary injunction in front of it, that it may not reach it before the commission reaches its adjudicatory decision. And so that is somehow communicated. And then they go on to say, since a permanent injunction could only be granted after such a hearing, this will assure the court of the ability to set a definite hearing date. Furthermore, the commission will have the ability in the routine fraud case to merely seek a permanent injunction in those situations in which it does not desire to further expand on the prohibitions of the FTC Act through the issuance of a cease and desist order. Then it talks about commission resources will be better utilized. So when you look at the plain language after a proper case, which is undefined, and so what is a proper case? Well, the FTC takes the position that a proper case is any case that it brings and where it can get relief from a court. Well, that really does damage to the idea that Congress has said, in a proper case and upon proper proof, and the legislative history talks about certain conditions, that the FTC is not a full grant of unbridled, standardless discretion for the FTC to file $1.27 billion lawsuits, like they did in AMG, or to go after everybody who they think has committed wrongdoing. Is it your view that an injunction is just supposed to preserve the status quo? Yes, sir. And that's it. And then whatever else goes on is just sort of frozen in place and then something else would be unrelated to an injunction, I assume. That's absolutely right, sir. We don't think that it was just a stopgap measure. And then Congress, two years after it adopted Section 13B, and 13B was proposed before, I'm sorry, consumer redress was proposed in the Senate Bill 356, which was rejected by Congress, and then they adopted Section 13B in 1973, several months later, I believe, after they rejected consumer redress. And so what the FTC is asking the court to do is asking the court to assume that Congress, even though it rejected consumer redress in Senate Bill 356, they somehow were willing to grant this broad discretion to the FTC in Section 13B. And that strains credulity, frankly. Congress obviously didn't intend it. They rejected it. And then in 75, two years later, they adopted Section 19. And Section 19 is even more interesting because it doesn't have the broad sweep of all the monetary remedies that the FTC seeks. Section 19 authorizes the FTC to seek cancellation of contract, rescission of contracts, to seek monetary losses, and so on. So it doesn't authorize specifically disgorgement, which I think would have created a firestorm on Capitol Hill if someone at that point in time in 75 was proposing that the FTC had this incredible power to shut down small businesses and large corporations alike. So when you look at Section 19, clearly Congress intended that Section 19 be the exclusive remedy for collecting damages to somehow compensate consumers. Now, the other interesting thing in this case is the issue of whether consumers are ever paid. When we were below and talking about whether this is a deterrent or whether consumers got compensation on a timely basis, at that point the record was pretty bleak in terms of consumers getting compensation. I think 56% got it. And now the FTC is suggesting that there's a better track record. We presented evidence that Section 13b was punitive and that these actions were for purposes of deterrence, and we produced at least one or two statements from the FTC commissioners saying exactly that, cited some cases. And in our brief we have a few more cases where the courts have recognized that this is for deterrence. And so the issue of restitution is they saw it and the court granted all the losses suffered by consumers, and that's not the proper measure under principles of restitution. The proper measure is the net gain of the wrongdoer. So in this case, my client got socked not only with all the losses that could be attributed to him, supposedly, but by Pierce and Lloyd, which we think just doesn't stand because none of these gains could be traced under established principles of restitution. So I'd like to reserve my remaining time for a rebuttal, Your Honor. That's fine. Thank you. Mr. Bergman. Good morning, Your Honor. May it please the Court, my name is Michael Bergman. I represent the Appellee Federal Trade Commission in this matter. The one thing that struck me in my opposing counsel's discussion just now was a complete lack of admitting what Supreme Court precedent, this court's long line of precedent, starting with Amy Travel, was based on. So we have 30 years of longstanding precedent here in the Seventh Circuit, including from Amy Travel. In the achievement case in 2002, the court said that the authority to grant a 13B redress to the victims is and cannot be questioned. The Supreme Court has never spoken to the scope of 53B. That's correct, Your Honor. So let's go back to basic principles here. The opposing counsel just forgot to mention the cases in which this circuit, the Ninth Circuit, all circuits, all other eight circuits that have granted the same redress. We're aware that there's a lot of case law encrusted onto this interpretation that the FTC has adopted of its own remedial power. But let's talk about what the statute permits. Sure, absolutely. Because we're being asked to revisit our circuit precedent, which we have a mechanism for doing. I understand, Your Honor. So absolutely, let's start with the text. So the text of the FTC's authority is from the permanent injunction, what we call the second proviso, which says that in proper cases, the commission may seek, and after proper proof, the court may issue a permanent injunction. That's the text. So starting with the text, permanent injunction, and what this court and many other courts have looked at is the Porter v. Warner case, followed by the Mitchell v. Robert DiMario case. So in Porter v. Warner, it was very much on point. In that case, the statute only allowed the authority for the administrator to seek and the court to grant an injunction against excessive rents. It was a wartime statute. And any other order. I'm sorry? And any other order. That's true. And any other order. That was part of the language. However, in the Mitchell case, it said that that sort of affirmative language was not necessarily required. That simply the fact that you're in equity, and the fact that there's permanent injunction authority, means that the court is now a court of equity. That alone, from that text, provides the full breadth of equitable relief. And can those decisions be reconciled with current methods of statutory interpretation as used by the Supreme Court? Oh, absolutely. Nothing since Porter v. Warner and Mitchell have shaved away that basic principle. Well, they were not textualist interpretations. Clearly, they were solely focused on effectuating congressional purposes as envisioned by the court, which is not how statutory interpretation is done in the current era. Well, I mean, it did go back to sort of basic equitable principles in that regard. And you're right. I'm just talking about statutory interpretation. That's our first order question here. I understand. Is how to properly read this statute? Does it give the FTC the authority that you claim? On its face, it does not. And especially when read in the context of the entire statutory scheme, which is a very specific system of, as the ERISA cases say, reticulated remedies that the court doesn't tinker with to effectuate broader purposes. We just enforce the remedies that are there. I understand. And this is a textual analysis. It can't be justified. Your claim of power can't be justified as a textual analysis. You have to resort to the Porter method of statutory interpretation, which is thoroughly discredited. Well, it did go back to basic principles of equitable power, which I don't think that has been discredited. I mean, there's been actually no case that has undermined and even the cases that my opposing counsel. Well, if that's your argument, then you have to grapple with Great West and Kokesh and Montague. Sure. No, no, no. And I'm happy you raised those. Because none of those cases, all those cases can be distinguished, because they all have additional language, which essentially limited the permanent injunction, the core injunctional authority of the court. So if you look at the ERISA cases like Great West and that followed. I'm sorry, just one second, please. Well, of course, the ERISA cases, before we launch into that, deal with a statute that does grant general equitable power, rather than this statute, which only authorizes an injunction. Well, that's true, Your Honor. But ironically, actually, given, as Judge Scalia said, in Great West and Montague being the other ERISA case, that it's actually more limited than what we have here in 13B. In 13B, we have the power to issue an injunction, which our strong position is, as courts have said, go back to basic equitable principles. However, in the ERISA cases, it's actually more limited, because they talk about injunction and other appropriate equitable relief. And the way that Judge Scalia interpreted that was to make sure that it wasn't redundant, that that had to be only equitable relief, that it's not just all relief that a court of equity can provide. In that regard, it's actually quite narrower than what we have. And so there they said that you're looking at just looking at How can that be? A statute that authorizes other equitable remedies is narrower than a statute that doesn't authorize any equitable remedies, except for an injunction? It is. That's an upside down argument. Well, our position is that actually the way that Judge Scalia interpreted that language made it more narrow, because he said that for this to have any purpose, it could only be powers that were purely inequity, like a constructive lien or an equitable lien or constructive trust, whereas the FTC has much broader powers. The FTC, because of the 13B permanent injunction authority, all the powers that are inherent to a court of equity, very broad, come into play. And this is particularly the case where you're dealing with a public proceeding where you have a public agency acting in the public interest. It takes a broader, more flexible approach. An implicit power is broader than an explicit power. That's your argument? Because this whole authority that the FTC has claimed is purely by implication, from the word injunction, which on its face doesn't mean all equitable power. But on its face, on the actual language, it doesn't say other equitable powers, but it doesn't need to, based on basic equitable principles. And yes, the answer is, it is narrower. The ERISA matters are narrower, because now you're putting that court in the box where it can only issue an injunction or powers that only equitable powers, not all powers that a court of equity can do, which could even include legal relief, for instance. And also, it's a private case, so it's very different than public actions. So in that case, it said that the plans that were trying to get reimbursement from third-party settlements, from plan beneficiaries, had to get it within the traditional equitable powers, remedies of constructive trust or equitable lien. Those were the methods, the only methods, that the plan, the petitions, I believe in those cases, could adopt. And that case, because in Great West, the plan beneficiaries never possessed the money. It went to their lawyers. It went to a fund. And in Montanile, the plan beneficiaries had already spent the money, and it no longer possessed it. They no longer possessed the thing that the plans wanted. And so that's why the court said, you can't go using traditional equitable routes, which is the only way you can do it, given the language of ERISA. What it really is is a breach of contract action, and you have to pursue a legal remedy. So in that regard, even though there's more language, and you see the word other equitable authority in the ERISA context, it's actually narrower, quite a bit narrower than we have in 13b, which is true, only uses the word permanent injunction, but that's all that's necessary. If 13b authorizes restitutionary relief of this nature, what work is section 19 doing? So I'm glad you asked that, because I was going to get to that next. So they're really part of, they're complimentary. For one thing, 19 was two years after 13b, and it contains a savings clause, as we know. And section 19E says that any other remedies that the FTC has are preserved. So it has a clear textual savings clause. Right, but if the agency already had this power under 13b, then why go to the trouble of enacting this remedy in 19b? So there are really three different approaches that the FTC can take. They can go directly to federal court, particularly where you've got a case that doesn't require the court's finance expertise in regulatory matter. It may be the more straightforward kind of fraud or deception case. It can go directly to federal court under the second proviso of section 13, or separately, it can go into federal court under 19, where you've got a rule violation, or you have a final cease and desist order, so an administrative action with an additional, there's a knowledge requirement there. So essentially, there's three different approaches. District FTC thinks this is a fairly straightforward case of fraud. It doesn't require our expertise in applying in this difficult realm of administrative or regulatory interpretation. So therefore, we're going to go the 13b direct district court route, or separately. Where do you find any of that in the text of the statute? Well, 19, well, which statute? So 19 clearly talks about what its scope is. So the scope of. Certainly, section 19 authorizes a court action for these, what are essentially damages remedies for rules violations and violations of cease and desist orders that have become final. Correct. With an additional. Right. But where do you get this interpretation of the 13b power that it authorizes the agency to go to court when it doesn't need to engage its expertise administratively? Where does any of that come from on the face of the statute? That may be how the agency operates, but that's not mentioned anywhere in the statute. I mean, no. 13b does not specifically talk about whether FTC does not want to apply its expertise in a particular case. Through an administrative rulemaking or through a cease and desist adjudication. Right. Right. But as we know, Congress does not And so there was clearly a need to provide some teeth to the section, particularly the section 5b administrative proceeding to allow the FTC to go in and enforce where there's been a violation of the 5b administrative route. But nothing takes away what happened two years earlier, which was this broad grant, unqualified grant, of equitable power under 13b. So even though 13b doesn't specifically say the words where the FTC doesn't need to apply its expertise, it didn't need to. Again, we're going back to hundreds of years of equity practice, where the power, again, Porter v. Warner and the Mitchell case, directly on point, directly support this, that once you have the power to restrain, the power to enjoin, you then, and it's unqualified, you then have the power to provide any ancillary relief that will accomplish complete justice, including monetary remedies. In both cases, they, in fact, did so. In Porter v. Warner, they allowed the reimbursement of the overcharges, the excessive rent. It was a wartime statute. And in Montanile, they allowed the repayment of back wages because of violations of labor law. So those two cases are directly on point. Hasn't our court, though, been critical of that? I'm looking at Judge Polzner's opinion in Apex Oil, where he's talking about both Mitchell and Porter are dead after this Megrig case, the environmental law structure. So if Megrig and these other authorities are scaling back what Porter meant, and our court is recognizing that, doesn't that undercut the FTC's position? We think that Megrig does not eviscerate the powers that this court has under 13b. And the Supreme Court still, in the 2015 Supreme Court case between two different states, Nebraska versus Kansas, actually reiterated the power, the basic principle from Porter, being that particularly where you're dealing with a public action, courts have very flexible authority. But going back to your question, Your Honor, Megrig, we think, is quite distinguishable from this case because, once again, it all comes down to the statutory text. These statutes are different from our unqualified authority under 13b. So in Megrig, it did not limit Porter. It was a private case, not a public case, which is a very important point. But a large part of what the court based its analysis on was a comparison between the Resource Conservation and Recovery Act, RCRA, which provided the injunctive authority. And it compared what RCRA provides with CERCLA, the Comprehensive Environmental Response and Compensation Liability Act. The acts have very similar points. But CERCLA, with an identical injunctive provision as in RCRA, provided expressly for the recovery of past cleanup costs. So the court said that the Congress, in fact, knew, given the comparison there. Again, it's a textual analysis comparing what those particular statutes say. Congress knew how to provide the recovery for cleanup costs in CERCLA, where if it wanted to, because it provided essentially the same kind of relief that was injunctioned, but cleanup costs in CERCLA, but not in RCRA. The other big difference that distinguishes that case from ours is that RCRA also had a timing issue. RCRA limited its injunction to instances of imminent danger. So it did not cover already cleanup costs. Once again, imminent is a word from the statute, from RCRA. And so in that regard, that is one of the reasons why the court came up with its analysis, that it wasn't going to provide this additional, allow monetary relief in RCRA, where it was specifically spoken to in CERCLA. So you had both the timing issue derived from text, from the word imminent, and the comparison of CERCLA providing, expressly providing for cleanup costs, and not doing so in RCRA. We don't have that comparison here. We have an unqualified grant of authority on the 13b. Isn't the larger point, though, that if a statutory enforcement mechanism exists, like Section 19, and that's out there, that's got to be read in pari materia with 13b to make a determination as to what may be, for example, prospective or retrospective? That's one of the points that Megrig is making, is the statutory mechanism exists. Well, a statutory mechanism does exist, and you have to look at the statute as a whole. But as I mentioned earlier, maybe I didn't explain myself well enough, is that it's complementary. I mean, there are different pieces of the puzzle. So 19 was the basic principle driving that, was a direct enforcement action in federal court for rule violations, and where the commission has gone in and sought an administrative complaint and gotten a cease and desist order, which it does sometimes, where it wants to apply its expertise in a novel regulatory area. So in those two areas, Section 19 provides that relief, those remedies. But in the separate area, once again, where the FTC may not want to apply, it doesn't feel a need to apply. It's slower. The administrative process is slower. It's more cumbersome. It requires more administrative resources. Where the commission says this is a more straightforward type of fraud or dishonesty, the FTC can bring a permanent injunction action. So they're read in pari materia. They're read together, and they make sense. Section 19 also provides a savings clause two years after the FTC had gotten the authority. So there's no conflict between 13b and 19, the way there was between Rickrand and CERCLA. Further to Judge Sykes' question before, can't they both be brought at the same time? Is it just historical practice that the FTC has made the determination, because of the way 13b has been interpreted, to only bring a 13b? Couldn't they bring a 13b and a 19 at the same time? I assume there's nothing that would bar it, but it would be perhaps a waste of resources. 19, again, has a particular use. A commission wants to articulate its expert analysis in a particular, let's say, novel regulatory area. And so we go to the 5b route. But one reason for the whole purpose of enacting Section 13 in 1973 was how slow and cumbersome the Section 5b administrative process was. Right, but the text of the statute in 13b contemplates the filing of an administrative complaint. And it's running in tandem with that. It basically says that if there are grounds for believing, if the commission has grounds to believe that someone is violating the FTCA or any of the statutes that the commission administers, and that it would be in the interest of the public to secure an injunction against that activity, you can go to court pending the filing of an administrative complaint and the initiation of administrative adjudication. And there are time limits put on that preliminary injunction.  over how long it will be in existence until a complaint is filed. So the injunctive remedy runs in tandem with administrative adjudication, not independent of it. OK, so we're talking really about, I just want to be a little more specific and clarify. I was referring to the permanent injunction, what we call the second proviso. Judge, you're absolutely correct. So what we call the first part of 13b was to enjoin what the commission believed to be wrongful conduct pending the completion of the administrative proceeding. That's in section 13b1. And so you're right. In those kinds of cases, the commission is seeking a federal court injunction to stop what we think to be unlawful conduct pending the completion of the administrative process. But as this court has said in JS&A group, as followed directly by World Travel Vacation Brokers in 1988, JS&A group talked about that the first part of 13b, preliminary injunctive relief pending the issuance of administrative proceeding, and the second proviso that authorizes permanent relief, are entirely different animals. Had Congress intended that the initiation or not of administrative complaint would affect the ability of the commission to seek a permanent injunction in the second proviso, it would have said so. It knew it had to say so. How is that a correct reading of the statutory language? These are, again, it's a reticulated statute. It says that the agency has the authority to go to court immediately for an injunction if there's reason to believe that someone is violating the act, without having initiated, or first initiated an administrative complaint. And then the preliminary injunction, if it issues, can be converted to a permanent injunction in a proper case. I mean, it's clearly an integrated statute. It's not the third proviso, I'm sorry, second proviso, third part of that statutory paragraph is not standalone. Well, it's clearly part of this remedial scheme that is granting the commission a limited set of new powers, in addition to its administrative authority. Correct. So in 13b does have all, it's a very long, 13b very long, a lot of language. Long, dense paragraph. Very dense paragraph. But this court, twice relying on legislative history, the Senate report that expressed, talked about the fact that legislative history, the Senate report of 1973, that the FTC can seek a permanent injunction directly in district court, where it does not desire to further expand upon the prohibitions of the FTC Act in administrative proceedings. So it is actually a separate part of, it's a different part of 13b. It is, in a sense, a standalone. I forgot the words you used about the 13a, preliminary injunction, turning into the permanent injunction, or whatever the transitionary words you used. But that's not necessarily at all the case. The first part of 13b stands alone from the second part, from the permanent injunction. But that's not how the agency actually interprets it in practice. Right. You go to court, you get your preliminary injunction, and then you litigate over the permanent injunction. You don't treat it as a standalone. You start with a preliminary injunction, and then you convert it to a permanent injunction. Well, we don't convert it to a permanent injunction. Well, it's all the same action. You don't file a freestanding, independent, permanent injunction action. It's all part of the same action in district court. So you don't treat it as standalone. Well, actually, the vast majority of the cases that we do bring are 13b cases where there is, in fact, no pending administrative case. So in those cases, we do seek, because people are doing bad things, like the defendants in our case, very, very bad things. And we want to put a stop to it right away. So we ask for a TRO, we ask for a preliminary injunction, and a permanent injunction. But that all comes from the second proviso. That comes standalone, second proviso. The first proviso is talking about the pending of administrative action. So we sometimes do that. We sometimes bring in administrative action. But those are two separate mechanisms. The legislative history says it's two separate mechanisms. This court, at least twice in JNSA group and World Travel Vacation Brokers, reaffirmed that there are two separate mechanisms that the FTC can use. No further questions? I think that. Thank you very much. Thank you. We hope the court affirms that this report is decisionable. Rebuttal. We'll be brief. A couple of things. I think it's important to look at Section 5 of the statute, because Section 5A speaks in terms of the FTC's mission is to prevent deceptive or unfair acts or practices. And so that statement of congressional intent at the very beginning of the statute, I think, permeates how this court should review the other succeeding provisions. The second point I'd like to make is I guess I was struggling with the district court just talking about the principles of Kokesh. It's the same. And I think the reaction was, well, this doesn't apply because of this fact, this fact, and this fact. But the principles of Kokesh, just as the principles of Megrig, apply to this case. And so Megrig talks about how there was a comprehensive enforcement scheme. And similarly, when we look back at Porter, this case doesn't even pass muster under Porter. Because in Porter, the court was talking about if about an inescapable inference arises, if the statute read as a whole, inescapably leads to the conclusion that this authority was granted. So even Porter had its limits. And of course, Porter had the other orders provision. And it was also, as a practical matter, in looking at this as a trial attorney, that statute was adopted in wartime. And then the court upheld the wartime powers. And there's, I would say, a natural inclination to extend protection because of the wartime conditions. All that being said, I do think that Megrig does spell either the demise or at least a serious look at the viability of Porter as controlling precedent to this court. Mr. Grishel, let's talk a little bit about the reliance on Kokesh. Isn't it a stronger argument for you to say that Knutson and Montanil more clearly distinguish between equitable and legal restitution? Kokesh has got this qualifying footnote three with regard to limitations of actions. Isn't the stronger argument that Knutson and Montanil provide this line that you're trying to draw, and the order here falls on the other side of that line? Yes, Your Honor. That's plainly what we've argued in our brief. We argued both cases below and before this court that certainly in light of the principles in Kokesh, those cases are very much in line with Kokesh and our controlling precedent when it comes to analyzing the statutory implications of restitution, whether it's under 13b or how it might be applied in section 19. So we do look at it that way. There's one other point. Follow up on that. Similar question then. What impact might that have on our case law if that ends up being the route that you're advocating for, the Montanil-Knutson route versus a Kokesh route? Any other implications for our precedent? For Seventh Circuit precedent, I would say that it depends, obviously, on each fact and circumstance. But in the statutory context, if we're talking about equitable monetary relief as this term that's been created by the FTC and some of the courts, when you look at that, it certainly applies to equitable monetary relief in that you can't be collecting damages judgments against somebody on behalf of consumers. It has to be restitution in its classic sense, where there's tracing of assets, where there's a sum that's held that can be traced back to the amounts, and where restitution is to recover the net gains of the defendant. The only other point I wanted to make, and this certainly may be of no moment to the court, but in our brief, we referred, it was troubling to me at the time that I saw this article that's posted on the FTC website, which indicates to me that they endorsed this article. It's by a gentleman named David Fitzgerald, who was one of the predecessors to Mr. Bergman. He goes through how the FTC had these two statutes and that people within the agency were very clear that Section 13B did not authorize monetary relief. That article talks about how they devised ways or were brainstorming about how they could extend the statute to get equitable monetary relief and not have to go through Section 19, because Section 19, from their standpoint, may be a lengthier proceeding, or it may involve different skill sets for people within the agency. It's hard to know. But when it comes right down to it, it looks like the agency was trying to find a way to circumvent the will of Congress, and they knew it. That's troubling to me as a lawyer, and it may be of concern to the court, because I think that it puts a slightly different spin on their attempts as an agency to have authority where Congress never authorized it and never intended it. Thank you. Thank you. Our thanks to all counsel. The case is taken under advisement.